# 14-60

IN THE UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

———————————

UNITED STATES OF AMERICA,

*Plaintiffs-Appellees*,

v.

APPLE INC.,

*Defendant-Appellant*,

and

HACHETTE BOOK GROUP, INC., HARPERCOLLINS PUBLISHERS L.L.C.,
THE PENGUIN GROUP, A DIVISION OF PEARSON PLC,
PENGUIN GROUP (USA), INC., SIMON & SCHUSTER, INC., VERLAGSGRUPPE
GEORG VON HOLTZBRINCK GMBH, HOLTZBRINCK PUBLISHERS, LLC, d/b/a
MACMILLAN, SIMON & SCHUSTER DIGITAL SALES, INC.,

*Defendants*.

———————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK (JUDGE DENISE COTE)

———————————

**FINAL BRIEF FOR PLAINTIFFS-APPELLEES
UNITED STATES AND PLAINTIFF-STATES\***

———————————

WILLIAM J. BAER
   *Assistant Attorney General*

MARK W. RYAN             KRISTEN C. LIMARZI
DANIEL MCCUAIG        ROBERT B. NICHOLSON
   *Attorneys*                  DAVID SEIDMAN
   U.S. Department of Justice    FINNUALA K. TESSIER
   Antitrust Division            *Attorneys*
                                  U.S. Department of Justice
                                  Antitrust Division
(Additional counsel listed on inside cover)    950 Pennsylvania Ave. NW Room 3224
                                  Washington, DC 20530-0001
                                  202-305-7420

GREG ABBOTT
   *Attorney General of Texas*

DANIEL T. HODGE
   *First Assistant Attorney General*

JOHN SCOTT
   *Deputy Attorney General for Civil
   Litigation*

JONATHAN F. MITCHELL
   *Solicitor General*

ANDREW OLDHAM
   *Deputy Solicitor General*

ERIC LIPMAN
   *Assistant Attorney General*
   Office of Attorney General of Texas
   P.O. Box 12548
   Austin, TX 78711-2548
   512-463-1579

ERIC T. SCHNEIDERMAN
   *Attorney General of the State of
   New York*

WON S. SHIN
   *Assistant Solicitor General*
   Office of Attorney General of New York
   120 Broadway, 25th Floor
   New York, NY 10271
   212-416-8808

GEORGE JEPSEN
   *Attorney General of Connecticut*

W. JOSEPH NIELSEN
   *Assistant Attorney General*
   Office of Attorney General of
   Connecticut
   55 Elm Street
   Hartford, CT 06106
   860-808-5040

Counsel for Plaintiffs State of Texas and State of Connecticut also represent the
following Plaintiffs: State of Alabama, State of Alaska, State of Arizona, State of
Arkansas, State of Colorado, State of Delaware, State of Idaho, State of Illinois, State
of Indiana, State of Iowa, State of Kansas, State of Louisiana, State of Maryland,
Commonwealth of Massachusetts, State of Michigan, State of Missouri, State of
Nebraska, State of New Mexico, State of North Dakota, State of Ohio, Commonwealth
of Pennsylvania, State of South Dakota, State of Tennessee, State of Utah, State of
Vermont, Commonwealth of Virginia, State of West Virginia, State of Wisconsin,
Commonwealth of Puerto Rico, and District of Columbia.

---

\* This brief was filed in both 14-60, *United States v. Apple Inc.*, and 14-61, *State of
Texas v. Penguin Group (USA) Inc.*.  In 14-60, the United States is represented by
counsel from the U.S. Department of Justice.  In 14-61, the Plaintiff-States are
represented by counsel as indicated.

# TABLE OF CONTENTS

JURISDICTIONAL STATEMENT ..................................................1

ISSUE PRESENTED ...................................................................3

STATEMENT OF THE CASE ....................................................4

   A.  Apple Is Adjudged Liable For Price Fixing After Trial ................4

   B.  The District Court Imposes An Injunction Providing For An
       External Compliance Monitor And Appoints A Monitor ..............6

   C.  Apple Resists The Monitor's Efforts To Do His Job.....................11

   D.  The District Court Declines Either To Stay The Monitorship
       Pending Appeal Or To Disqualify The Monitor ...........................15

   E.  This Court Declines To Stay The Monitorship Pending Appeal .17

   F.  Apple Waives Its Challenges To The Injunction In The
       Liability/Injunction Appeal ..........................................................19

   G.  This Court Declines To Consider Extrarecord Evidence In This
       Appeal ...........................................................................................20

SUMMARY OF ARGUMENT ....................................................22

STANDARD OF REVIEW...........................................................24

ARGUMENT ................................................................................25

   I.  Apple Must Challenge The Injunction's Legality In The
      Liability/Injunction Appeal, Not This Disqualification Appeal ..25

   II.  The District Court Did Not Abuse Its Discretion By Declining To
      Disqualify The Monitor ................................................................28

   III.  Apple's Objections To The Injunction Are Waived And Without
       Merit...............................................................................................34

i

A.  Apple Waived Its Rule 53 And Due Process Arguments ....... 34

B.  Apple's Rule 53 And Due Process Arguments Are Meritless  36

    1.  The District Court Properly Exercised Its Inherent Authority To Appoint A Compliance Monitor ................... 36

    2.  The Monitorship Does Not Violate Rule 53 ....................... 37

    3.  The Monitor Is Not A Prosecutor, Nor Does He Have An Improper Interest In The Outcome Of The Case ............. 47

C.  Apple Cannot Save Its Waived Arguments By Recasting Them As Implicating The Federal Separation Of Powers ..... 49

CONCLUSION ......................................................................... 53

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Allianz Insurance Co. v. Lerner*, 416 F.3d 109 (2d Cir. 2005) .............. 35

*Buckley v. Valeo*, 424 U.S. 1 (1976) ....................................... 52

*Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009) ....................... 48

*City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114
(2d Cir. 2011) ............................................................. 36

*Cobell v. Norton*, 240 F.3d 1081 (D.C. Cir. 2001) ........................ 31, 43

*Cobell v. Norton*, 334 F.3d 1128 (D.C. Cir. 2003) ........................ *passim*

*Ex Parte Peterson*, 253 U.S. 300 (1920) ................................... 36

*Ford Motor Co. v. United States*, 405 U.S. 562 (1972) ..................... 37

*Global Van Lines, Inc. v. ICC*, 804 F.2d 1293 (D.C. Cir. 1986) ............ 43

*Greene v. United States*, 13 F.3d 577 (2d Cir. 1994) ...................... 34

*Griggs v. Provident Consumer Discount Co.*,
459 U.S. 56 (1982) ........................................................ 34

*In re Basciano*, 542 F.3d 950 (2d Cir. 2008) ............................. 24

*In re Drexel Burnham Lambert, Inc.*, 861 F.2d 1307
(2d Cir. 1988) ......................................................... 24, 28

*Kerr v. United States District Court*, 426 U.S. 394 (1976) ................ 24

*La Buy v. Howes Leather Co.*, 352 U.S. 249 (1957) ........................ 44

*Liddell ex rel. Liddell v. Board of Education of the City of St.
Louis*, 105 F.3d 1208 (8th Cir. 1997) .................................... 26

*Local 28 of Sheet Metal Workers' International Association*
  *v. EEOC*, 478 U.S. 421 (1986) ................................................ 36, 38, 50

*McKusick v. City of Melbourne*, 96 F.3d 478 (11th Cir. 1996) .............. 27

*Mick Haig Productions E.K. v. Does 1-670*,
  687 F.3d 649 (5th Cir. 2012) ......................................................... 35

*Morrison v. Olson*, 487 U.S. 654 (1988) ........................................... 50, 52

*National Society of Professional Engineers v. United States*,
  435 U.S. 679 (1978) ....................................................................... 36

*People ex rel. Clancy v. Superior Court*,
  39 Cal. 3d 740 (1985) ..................................................................... 48

*Reed v. Rhodes*, 691 F.2d 266 (6th Cir. 1982) ..................................... 44

*Ruiz v. Estelle*, 679 F.2d 1115 (5th Cir. 1982) .............................. *passim*

*Samnorwood Independent School District v. Texas*
  *Education Agency*, 533 F.3d 258 (5th Cir. 2008) .............................. 27

*SEC v. Pentagon Capital Management PLC*,
  725 F.3d 279 (2d Cir. 2013) ........................................................... 24

*SEC v. Razmilovic*, 738 F.3d 14 (2d Cir. 2013) ................................ 28, 30

*Shiley, Inc. v. Bentley Laboratories, Inc.*,
  782 F.2d 992 (Fed. Cir. 1986) .................................................... 26, 27

*UFCW Local 880-Retail Food Employers Joint Pension Fund*
  *v. Newmont Mining Corp.*, 276 F. App'x 747
  (10th Cir. 2008) .............................................................................. 26

*United States v. Philip Morris USA Inc.*, 449 F. Supp. 2d 1
  (D.D.C. 2006) .................................................................................. 52

*United States v. Philip Morris USA Inc.*, 566 F.3d 1095
  (D.C. Cir. 2009) ......................................................................... 52, 53

iv

*United States v. Yonkers Board of Education*, 946 F.2d 180
  (2d Cir. 1991)........................................................................ 2, 26, 30

*Young v. United States ex rel. Vuitton et Fils S.A.*,
  481 U.S. 787 (1987) .................................................................. 48, 50

*Zhang v. Gonzales*, 426 F.3d 540 (2d Cir. 2005) ..................................... 25

# FEDERAL STATUTES AND RULES

15 U.S.C. § 1 ............................................................................... 5

28 U.S.C. § 455 ........................................................................... 28

Federal Rule of Appellate Procedure 8 ................................................. 26

Federal Rules of Civil Procedure:
  52 ......................................................................................... 24
  53 .................................................................................. *passim*

# MISCELLANEOUS

Thomas E. Willging et al., *Special Masters' Incidence and
  Activity*, Federal Judicial Center (2000) ........................................... 33

## JURISDICTIONAL STATEMENT

Plaintiffs, the United States of America and thirty-three states and U.S. territories,[1] charged Apple with violating the antitrust laws and sought injunctive relief.  The Plaintiff-States also sought damages.  The district court addressed liability and injunctive relief first, reserving the damages claims for later proceedings.  After finding Apple liable, the court entered "Plaintiff United States' Final Judgment and Plaintiff States' Order Entering Permanent Injunction," Dkt.374 (A465-81)[2], which, among other things, provided for the appointment of an external compliance monitor.  The court then appointed Michael Bromwich as Monitor.

Apple sought the Monitor's disqualification, which the court denied. Apple immediately filed two notices of appeal from that decision, one in

---

[1] The Plaintiff-States are Alabama, Alaska, Arizona, Arkansas, Colorado, Connecticut, Delaware, Idaho, Illinois, Indiana, Iowa, Kansas, Louisiana, Maryland, Massachusetts, Michigan, Missouri, Nebraska, New Mexico, New York, North Dakota, Ohio, Pennsylvania, South Dakota, Tennessee, Texas, Utah, Vermont, Virginia, West Virginia, Wisconsin, the District of Columbia, and Puerto Rico.

[2] Unless otherwise indicated, docket references (Dkt.___) are to the district court docket in the United States' case, No. 12cv2826.

the United States' case, 14-60.Dkt.1, and one in the Plaintiff-States'

case, 14-61.Dkt.1.  Both notices relied for appellate jurisdiction on

*United States v. Yonkers Board of Education*, 946 F.2d 180 (2d Cir.

1991), which establishes this Court's jurisdiction over "substantive post-

judgment orders," *id.* at 183, such as the denial of a recusal request.

*Yonkers* supports jurisdiction in the United States' case (No. 14-60) but

does not speak clearly to jurisdiction in the Plaintiff-States' case (No.

14-61), as the order under appeal pre-dates a final judgment in that

case.  Apple briefly mentions mandamus jurisdiction in its opening

brief, Br. 2,[3] but never argues that mandamus is appropriate here.

---

[3] Apple filed identical briefs in the United States' case (No. 14-60) and
the Plaintiff-States' case (No. 14-61).  Brief references (Br.) are to both
briefs.

2

## ISSUE PRESENTED

Whether the district court abused its discretion in declining to disqualify the appointed external compliance monitor.

## STATEMENT OF THE CASE

Apple, led by its highest-level executives and its in-house counsel, orchestrated a conspiracy with five major book publishers[4] to fix and raise ebook prices. Apple showed a "blatant and aggressive disregard" for the law, Dkt.371.17:1-2 (A441), and at trial its executives testified non-credibly in its defense. After trial, Apple failed to establish its willingness or ability to develop an effective in-house antitrust compliance program, and so the district court appointed an external monitor to assist it in assessing Apple's antitrust compliance programs. In seeking to stay the monitorship, Apple attacked the conduct and character of the appointed Monitor, and then sought his disqualification because he responded, in a declaration, to those attacks. The district court denied the disqualification request; Apple now appeals that order.

### A. Apple Is Adjudged Liable For Price Fixing After Trial

The United States and Plaintiff-States filed two separate complaints alleging that Apple and five Publisher-Defendants violated Section 1 of

---

[4] The Publisher-Defendants are Hachette Book Group, Inc., HarperCollins Publishers LLC, Holtzbrinck Publishers LLC d/b/a Macmillan, Penguin Group (USA), Inc., and Simon & Schuster, Inc.

the Sherman Act, 15 U.S.C. § 1.[5]  The Publisher-Defendants settled, and Apple alone proceeded to a bench trial on liability and injunctive relief.[6]

After extensive briefing and a three-week bench trial, the district court (Honorable Denise Cote) found that Plaintiffs had established, through "powerful" and "compelling" evidence, Apple's "central role in facilitating and executing" a conspiracy among competing ebook publishers "to eliminate retail price competition in order to raise e-book prices."  Dkt.326.130, 9 (A280, 159); *United States v. Apple Inc.*, 952 F. Supp. 2d 638 (S.D.N.Y. 2013).  The court concluded that the conspiracy – "at root, a horizontal price restraint" – was *per se* unlawful. Dkt.326.153 (A303).  Alternatively, the court found the conspiracy unlawful under the rule of reason because it harmed competition, raised

---

[5] Plaintiff-States also alleged and successfully proved violations of congruent state statutes.

[6] A separate jury trial on the Plaintiff-States' damages claims had been scheduled, but the parties later agreed to settle those claims.  The district court has granted preliminary approval of that settlement agreement.  *See* 12cv3394.Dkt.540 (A985-93); *In re Elec. Books Antitrust Litig.,* 2014 WL 3798764 (S.D.N.Y. Aug. 1, 2014).

prices, and reduced output, while offering no countervailing procompetitive benefits. *Id.* at 121 (A271). The conspiracy "did not promote competition," as Apple claimed, "but destroyed it." *Id.*

The court also found that the conspiracy had been orchestrated by Apple's highest-level executives and its in-house counsel. Two of those executives (Senior Vice President Eddy Cue and iTunes Director Keith Moerer) and an in-house lawyer (Kevin Saul) testified at trial and were "noteworthy for their lack of credibility." *Id.* at 143n66 (A293); *see also id.* at 43n19, 71n38, 84n47, 90n52, 93n53 (A193, 221, 234, 240, 243).

## B. The District Court Imposes An Injunction Providing For An External Compliance Monitor And Appoints A Monitor

Because Apple's senior executives and in-house counsel coordinated this price-fixing conspiracy, Plaintiffs proposed an injunction calling for, among other things, an external monitor to ensure Apple's compliance with all terms of that proposed injunction and the antitrust laws. Dkt.329 (A312-27). Apple claimed the proposed injunction was "unnecessary, overbroad, vague, and punitive," Dkt.331.6 (A338), but did not argue that the court lacked authority to impose a monitor or that a monitorship would be unconstitutional, *see id.* at 9-13 (A341-45).

6

At the initial remedies hearing on August 9, 2013, the district court expressed a desire that Apple "adopt a vigorous in-house antitrust enforcement program" and eliminate the need for a monitor. Dkt.356.66:11-17 (A377). At the court's direction, *id.* at 66:23-67:4 (A377-78), the parties met and conferred, but they reached no agreement. Plaintiffs then filed a slightly revised proposal, Dkt.359 (A385-404), which Apple opposed on the ground that a monitorship was "unreasonable and unjustified," Dkt.360.2 (A406).

At a second remedies hearing on August 27, 2013, the court stated that the record showed "a blatant and aggressive disregard at Apple for the requirements of the law. Apple executives used their considerable skills to orchestrate a price-fixing scheme that significantly raised the prices of E-books. This conduct included Apple lawyers and its highest level executives." Dkt.371.17:1-6 (A441). The court also noted that, at trial, neither Cue nor Saul, "could remember any training on antitrust issues." *Id.* at 18:7-9 (A442). The court had "invited and expected a detailed and persuasive presentation of the steps Apple was committed to take to ensure that the government need never again expend its resources to bring Apple into court for violations of the country's

7

antitrust laws." *Id.* at 17:10-14 (A441). Despite "several opportunities," Apple had not shown that an external monitor was unnecessary. *Id.* at 17:7-10 (A441).

Nonetheless, the court wanted the Injunction to "rest as lightly as possible on the way Apple runs its business," *id.* at 8:25-9:1 (A432-33), and so it gave the Monitor a narrow and "carefully defined role," *id.* at 17:19-20 (A441). The Monitor may not – as Plaintiffs had proposed – assess compliance with every aspect of the Injunction (such as those provisions governing Apple's contracts with the Publisher-Defendants). *Id*. at 17:22-25 (A441). Nor may he investigate or seek out evidence of antitrust violations, although he must provide Plaintiffs with any such evidence he nonetheless finds. Dkt.374.VI.F (A476-77).

Instead, the Monitor's only task is to help the court evaluate Apple's internal antitrust compliance policies and procedures and the antitrust training program required by the Injunction, Dkt.371.18:1-6 (A442), to ensure the compliance programs are "reasonably designed to detect and prevent violations of the antitrust laws" and the training program "is sufficiently comprehensive and effective," Dkt.374.VI.C (A475-76). The district court wanted Apple to have an opportunity to "revise its current

[antitrust compliance] policy . . . and create an effective training program," Dkt.371.21:2-8 (A445), and so the Injunction requires that the Monitor assess Apple's programs and policies "as they exist 90 days after his . . . appointment," Dkt.374.VI.C (A475).

To that end, "in connection with the exercise of his . . . responsibilities," the Monitor may inspect relevant documents and interview Apple personnel at their reasonable convenience and with counsel present. *Id.* at VI.G (A477). While the Monitor may recommend any changes to Apple's compliance and training programs he deems necessary, *id.* at VI.B (A475), he may not direct Apple to adopt them, *id.* at VI.D-E (A476). Apple may object to his recommendations, propose alternatives, and obtain a ruling from the court. *Id.* at VI.E (A476).

The Injunction specifies a procedure for Apple to object to any of the Monitor's actions, first with the Plaintiffs and then with the district court. *Id.* at VI.H (A477); *see also* Dkt.437.13-14 (A906-07).

The Injunction also specifies how the Monitor is to be selected. Apple can suggest candidates to the Plaintiffs, who must recommend one or more candidates to the court. Dkt.374.VI.A (A474-75). And

9

Apple can object to the Plaintiffs' recommendations.  *Id.*  The Injunction also explicitly contemplates candidate interviews by the United States and the district court.  *Id.*

Finally, the Injunction provides that the Monitor serves "at the cost and expense of Apple, on such terms and conditions as the [Plaintiffs] approve[]."  *Id*. at VI.I (A478).  If Plaintiffs or Apple "determine[] that the [monitor] has ceased to act or failed to act diligently or in a cost-effective manner," either may recommend appointment of a new monitor.  *Id.* at VI.J (A478).

At the August 27 hearing, the district court gave Apple an opportunity to consider and object to the proposed terms of the Injunction.  Dkt.371.22:5-19 (A446).  Apple maintained its prior objections to the Monitor as unnecessary but did not object to any of the monitorship provision's specific proposed terms.  Dkt.437.11-12 (A904-05); *see* Dkt.371.37:23-25 (A461).  The court then directed the parties to meet and confer to determine the final language of the Injunction.  On September 5, Plaintiffs provided the court with a revised proposed Injunction, "the form of which ha[d] been agreed to by the parties."  *See* Dkt.437.12 (A905).  Apple reserved its appellate rights

10

but did not raise any specific objections to the substance or wording of the revised proposed Injunction.  *Id.*  Thus, on September 5, 2013, the court entered the Injunction.  Dkt.374 (A465-81).

On September 30, 2013, Plaintiffs proposed monitor candidates for the court's *in camera* review, including Michael Bromwich, a former Inspector General of the Justice Department, with antitrust specialist Bernard Nigro to assist him.  Apple's "objection to Bromwich was brief, and essentially confined to the argument that Nigro was an antitrust specialist and that a dual-monitor structure was unnecessary." Dkt.437.14 (A907).  On October 16, 2013, the court appointed Bromwich as Monitor with Nigro to assist him.  Dkt.384 (A482-83).

## C.  Apple Resists The Monitor's Efforts To Do His Job

On October 3, 2013, after entry of the Injunction but before the Monitor's appointment, Apple appealed the Final Judgment in the United States' case (No. 13-3741) and the Permanent Injunction in the States' case (No. 13-3857) (consolidated) (the Liability/Injunction Appeal).  Although Apple contested both liability and remedy, it did not then seek a stay of the Injunction pending appeal.  Instead, Apple

simply resisted the Monitor's efforts to do his job.  *See* Dkt.437.15-29 (A908-22).

On October 22, the Monitor informed Apple's counsel that he wished to use the initial ninety-day period to gather background information about such topics as the company's oversight structure for antitrust compliance and the role of the Board's Audit and Finance Committee in compliance matters.  Dkt.424.¶15 (A650).  For that reason, the Monitor asked for initial meetings with members of the Board of Directors and senior management and for certain relevant documents.  *Id.* at ¶¶15-16 (A650-51).  Apple resisted, claiming that its Board members and senior executives were busy, that they did not expect to have to deal with the Monitor, and that there was "a lot of anger" about the case within Apple.  *Id.* at ¶16 (A651).  In a subsequent letter, Apple's counsel claimed that because the Injunction required the Monitor to assess policies "as they exist 90 days after his or her appointment," the Monitor could do essentially no work during the Injunction's first 90 days.  Dkt.424.ExhK (A697-98).

Shortly after his appointment, the Monitor also informed Apple of his and Nigro's proposed fees.  Dkt.424.ExhB (A665).  Apple objected to

12

the Monitor's fee of $1,100 per hour and Nigro's fee of $1,025 per hour and offered fees of $800 and $700 per hour, respectively. Dkt.424.ExhF (A673-74). Apple asserted that, "like all of Apple's legal service providers," the Monitor must comply with Apple's Outside Service Provider Policy and its standard expense policy. *Id.*

After repeated requests, Apple agreed to allow the Monitor to conduct a few interviews and review a few documents before December 2013. On November 18, the Monitor met for an hour each with Apple's Chief Compliance Officer and an attorney with responsibilities relating to the Board's Audit Committee. Dkt.424.¶¶37,40 (A656). Three of Apple's outside counsel attended, in person or on the phone. *Id*. Plaintiffs did not attend the interviews. The Monitor also met that day with Noreen Krall, Apple's Vice-President and Chief of Litigation, to discuss fees and other issues. *Id.* at ¶41 (A656). The Monitor received none of the documents he had requested before these meetings, although Apple produced a few documents on November 21. *Id.* at ¶44 (A657).

The Monitor conducted additional interviews between December 4 and 6, meeting with the Chair of the Board Audit Committee and nine

13

employees, two of whom he had already interviewed and had not asked to meet again. *Id.* at ¶¶49-50 (A658-59). Apple's outside counsel were present for all these interviews. *Id.* Plaintiffs were not. On December 10, the Monitor interviewed Apple's General Counsel by phone. *Id.* at ¶52 (A659). Thus, during the first three months of his appointment, Apple allowed the Monitor to conduct only thirteen hours of interviews with eleven people, seven of whom are lawyers. Dkt.437.29 (A922). The Monitor met with only one Board member. *Id.* And Apple provided the Monitor with only 303 pages of documents. *Id.*

Apple never used the Injunction's procedures to raise with the court its objections to the monitor's attempts to carry out his duties. Thus, the court was "[u]naware of any of these interactions between the Monitor and Apple, that the Monitor was having difficulty obtaining cooperation from Apple, or that Apple had complaints about the Monitor" when it proposed to amend the order appointing the Monitor to allow him to brief the court *ex parte*. Dkt.437.29-30 (A922-23); *see* Dkt.410 (A484-86). Apple objected to that amendment, raising with the district court, for the first time, a list of concerns regarding the Monitor's performance of his duties. Dkt.411 (A487-517). The district

14

court declined to enter the proposed amendment and reminded Apple to use the procedures in the Injunction "designed to resolve any concerns about the monitoring." Dkt.413.2 (A519). The court also stated that it would entertain any objections that had by then become untimely, so long as Apple first consulted with Plaintiffs. *Id.* at 3 (A520).

## D. The District Court Declines Either To Stay The Monitorship Pending Appeal Or To Disqualify The Monitor

Apple did not take advantage of the district court's extension of time for raising objections to the Monitor's actions. Instead, on December 13, 2013, it asked the district court to stay the monitorship pending appeal, arguing that the monitorship was unconstitutional and violated Federal Rule of Civil Procedure 53 and that the Monitor's fees were excessive and irreparably harmed Apple. *See* Dkt.416, 417 (A585-88, 589-616). In support of that motion, Apple filed declarations by its counsel making numerous allegations about "the conduct and the character" of the Monitor. Dkt.437.53 (A946); *see* Dkt.418, 419 (A522-24, 525-29). In response, the Monitor wrote a declaration detailing for the court his dealings with Apple. Dkt.424 (A647-663).

In reply, Apple explained that its "objections turn primarily on the way in which the injunction is being implemented, not the terms of the

15

injunction." Dkt.427.14 (A819).  Apple then argued that "Mr. Bromwich must be disqualified" because his payment at an hourly rate gave him an improper financial incentive in the case and because his responsive declaration relied on personal knowledge of disputed facts and demonstrated that he was biased.  Dkt.427.3-5 (A808-10).

   The district court denied Apple's requests to stay the Injunction and disqualify the Monitor on January 16, 2014.  *See* Dkt.437 (A894-957); *United States v. Apple Inc.*, 2014 WL 171159 (S.D.N.Y. Jan. 16, 2014); *see also* Dkt.441 (A833-93). The court expressed "disappoint[ment]" that Apple was "doing its best to slow down . . . if not stonewall the process." Dkt.441.41:13-20 (A873).  The court noted that, despite being "integrally involved in the Injunction drafting process," Apple never raised during that process the arguments made in its stay motion. Dkt.437.41 (A934).  Apple thus waived many of those arguments.  *Id*. at 57 (A950).  Many arguments Apple abandoned in its reply brief.  *Id*. Still others were moot.  *Id*. at 3 (A896).  The court nonetheless addressed all of Apple's arguments, ruling that the Monitor was properly appointed under both the court's inherent authority and its supplemental Rule 53 authority.  *Id.* at 37-43 (A930-36).

16

The court also refused to disqualify Bromwich. Apple cited "no authority for the proposition that a monitor cannot be paid at an hourly rate." *Id*. at 50 (A943). And although Apple never objected to the Injunction's fee-setting provisions, the court nonetheless referred Apple's objection to the Monitor's proposed hourly rate to a magistrate for resolution. *Id*. at 49-52 (A942-45). The court also held that the Monitor's declaration "provides no basis to find that [he] is acting out of personal bias or prejudice." *Id*. at 54 (A947). The declaration appropriately "stemmed from facts acquired in connection with the discharge of his duties as Monitor" and was "proper and necessary" for the court to assess the factual allegations underlying Apple's attacks on the Monitor's conduct and character. *Id*. at 53-54 (A946-47).

## E. This Court Declines To Stay The Monitorship Pending Appeal

Apple appealed the order denying its request for a stay and for disqualification of the Monitor in the United States' case (No. 14-60) and the States' case (No. 14-61) (the "Disqualification Appeals") the very day the order issued. The next day, Apple asked this Court for an emergency stay of the monitorship pending appeal in both the earlier Liability/Injunction Appeal, 13-3741.Dkt.91, and in the Disqualification

17

Appeal, 14-60.Dkt.10; 14-61.Dkt.5. Apple argued that the monitorship violated Rule 53 and the constitutional separation of powers, that the Monitor's fees were excessive, and that the Monitor should be disqualified because of his responsive declaration.

During oral argument on this motion, "it became apparent" to the Court "that the parties differed considerably regarding the proper interpretation of the [Injunction]." 14-60.Dkt.63; *United States v. Apple Inc.*, 2014 WL 1623734 (2d Cir. Feb. 10, 2014) ("Order Denying Stay"). In particular, the parties differed on two questions: First, "whether the monitor was empowered to demand access to any document, and to interview Apple executives with respect to any subject, without limitation, and without regard to the relevance of such documents or subjects to the specific purpose of the monitorship." *Id*. And second, "whether the monitor had the authority to investigate new violations of anti-trust laws (or, for that matter, any unlawful conduct)." *Id.*

Plaintiffs explained that the Injunction prohibits the Monitor from reviewing whether Apple employees are "in fact complying with the antitrust or other laws," *id.*; *see also* 2/4/14 Arg. Tr. at 30:25-31:23 (A968). Instead, the Injunction requires that he "assess the

18

appropriateness of the compliance programs adopted by Apple," including determining whether "senior executives and board members are being instructed on what those compliance policies mean and how they work." Order Denying Stay. Moreover, the Monitor may request documents and conduct interviews only as they are necessary "in connection with the exercise of his or her responsibilities." Dkt.374.VI.G (A477); 2/4/14 Arg. Tr. at 25:19-26:2 (A966-67).

On February 10, 2014, this Court issued an order in which it "agree[d] with [Plaintiffs'] interpretation of the district court's order" and denied Apple's request for a stay. Order Denying Stay.

## F. Apple Waives Its Challenges To The Injunction In The Liability/Injunction Appeal

On February 25, 2014, Apple filed its opening brief in the Liability/Injunction Appeal. The brief focused almost exclusively on the court's liability decision. Apple devoted just over one of its 64 pages to the legality of the Injunction and only one conclusory sentence to the arguments about the monitorship that had formed the basis of its requests for a stay pending appeal. *See* 13-3741.Dkt.292.63-64. Plaintiffs argued that Apple had waived its challenges to the Injunction. *See* 13-3741.Dkt.301.103. In reply, Apple purported to "incorporate[] by

19

reference" the arguments about the Injunction's legality raised in its

opening briefs in this later appeal.  *See* 13-3741.Dkt.293.40.

## G.  This Court Declines To Consider Extrarecord Evidence In This Appeal

On May 1, 2014, Apple submitted for filing its opening briefs in the

Disqualification Appeals.  At the same time, Apple filed a motion to

supplement the record on appeal with (or for this Court to take judicial

notice of) certain nonpublic documents, such as the Monitor's invoices.

Apple cited these documents in its brief, even though they were not

before the district court when it denied Apple's request to disqualify the

Monitor.  Plaintiffs responded that the documents in question were not

relevant to the sole question at issue in this appeal: whether the district

court abused its discretion in denying Apple's request to disqualify the

Monitor on January 16, 2014.  This Court denied Apple's motion,

finding that the "materials submitted are neither part of the district

court record nor properly subject to judicial notice" and that they are

not "relevant to the issues on appeal."  14-60.Dkt.91; *United States v.*

*Apple Inc.*, Nos. 14-60, 14-61 (2d Cir. May 12, 2014).  The Court

instructed Apple that if it "believes that factual circumstances occurring

since the district court order under review present materially changed

20

circumstances warranting relief . . . [its] proper remedy is to move in the district court for a modification of the monitorship order." *Id.* The Court also instructed Apple to file a revised brief without reference to the extra-record material. Apple filed its revised brief on May 15, 2014.

## SUMMARY OF ARGUMENT

1.  This appeal presents a single question: Did the district court abuse its discretion in declining to disqualify the external compliance monitor?  It did not.  The Monitor's report of his interactions with Apple was "proper and necessary" because Apple had made "serious attacks bearing on the conduct and the character of the Monitor in connection with his conduct of the monitorship."  Dkt.437.53 (A946).  His declaration, limited to information he properly obtained while doing his job, enabled the court to assess Apple's allegations and to make its own findings, which Apple does not challenge as clearly erroneous here.  And the Monitor should not be disqualified because he is paid for his time.

2.  This appeal is not about the district court's authority to impose a monitor.  Apple already appealed the Injunction itself, and it should have raised any objections to its provisions in that appeal.  Apple waived its arguments there, however, by raising them only in conclusory sentences or by reference to this appeal.  Apple cannot use this appeal to resuscitate those arguments; the order on appeal here denied only disqualification of the Monitor, which is before this Court, and a stay of the Injunction, which is not appealable at all.

22

3. Even if properly presented here, Apple's objections to the Injunction would warrant no relief. First, Apple waived its Rule 53 and Due Process arguments by raising them in district court only after it appealed the Injunction. And in any event, the district court properly exercised its broad remedial discretion and its inherent authority to appoint a Monitor with a narrow mandate – evaluating Apple's antitrust training and compliance programs – and limited powers. The Monitor may request (but not demand) relevant interviews and documents, and he may recommend (but not order) changes to Apple's compliance programs. The Monitor is not a prosecutor – the Injunction "expressly prohibits prosecutorial investigative activity." Dkt.437.50 (A943). And he is disinterested – he is paid for his time, not his decisions. Moreover, Apple may (but did not) use the Injunction's procedures to object to any actions by the Monitor it believes are inappropriate.

Finally, the monitorship does not implicate the separation of powers. The Monitor has no license to intrude on another branch of government; he has only appropriate and limited authority to review a private company's compliance with certain aspects of a district court's order.

23

## STANDARD OF REVIEW

This Court reviews a district court's factual findings for clear error. Fed. R. Civ. P. 52(a)(6); *SEC v. Pentagon Capital Mgmt.*, 725 F.3d 279, 284 (2d Cir. 2013). The denial of a disqualification motion is reviewed for abuse of discretion. *In re Basciano*, 542 F.3d 950, 956 (2d Cir. 2008). Apple also mentions mandamus as an alternative basis for this Court's jurisdiction. Br. 2. That remedy "is a drastic one, to be invoked only in extraordinary situations." *In re Drexel Burnham Lambert, Inc.*, 861 F.2d 1307, 1312 (2d Cir. 1988) (quoting *Kerr v. United States District Court*, 426 U.S. 394, 402 (1976)).

## ARGUMENT

## I. Apple Must Challenge The Injunction's Legality In The Liability/Injunction Appeal, Not This Disqualification Appeal

The only issue properly before the Court in this appeal is whether the district court abused its discretion in denying Apple's request to disqualify the appointed Monitor.  *See* Br. 34-37.  Most of Apple's brief, however, challenges the Injunction itself, Br. 17-34, which is not on appeal here.  Rather, the legality of the Injunction is properly encompassed by Apple's appeal from the Injunction itself, *see* 13-3741.Dkt.1, which is now fully briefed and awaiting argument, *see* 13-3741.Dkt.292, 293, 301.  Apple in fact challenged the legality of the Injunction in its opening brief in the Liability/Injunction appeal, 13-3741.Dkt.292.63-64, but in a manner so cursory as to waive its arguments, which were in any event meritless, 13-3741.Dkt.301.103 (citing *Zhang v. Gonzales*, 426 F.3d 540, 545 n.7 (2d Cir. 2005)); *see also* 13-3741.Dkt.292.63-64.  In its reply brief in that appeal, Apple purported to incorporate by reference its opening brief in this appeal, s*ee* 13-3741.Dkt.293.40, thereby seeking to add many arguments to the Liability/Injunction appeal, long after Plaintiffs filed their brief.

25

But Apple cannot use this appeal to make arguments that should have been briefed in the Liability/Injunction appeal.  First, this Court does not have "jurisdiction over the post-trial order[] denying Apple's stay motion," as Apple claims.  Br. 2 (citing *Yonkers*, 946 F.2d at 183).  *Yonkers* provides appellate jurisdiction only over "substantive post-judgment orders" such as a denial of a disqualification request.  946 F.2d at 183.  In contrast, "the denial of a stay pending appeal is not an appealable order."  *Liddell ex rel. Liddell v. Bd. of Educ. of the City of St. Louis*, 105 F.3d 1208, 1212 (8th Cir. 1997).

An appeal of the denial of a stay motion makes no sense; the underlying appeal will often be decided first, rendering the stay request moot.  *See, e.g.*, *UFCW Local 880-Retail Food Emp'rs Joint Pension Fund v. Newmont Mining Corp.*, 276 F. App'x 747, 749 (10th Cir. 2008) (unpublished).  Instead, "[t]he proper procedure" after a district court's denial of a stay motion "is set forth in Fed. R. App. P. 8(a)."  *Shiley, Inc. v. Bentley Labs., Inc.*, 782 F.2d 992, 993 (Fed. Cir. 1986).  Indeed, Apple moved for a Rule 8 stay on January 17, 2014.  This Court denied the stay on February 10, 2014.  Apple "may not now seek the same remedy

26

under the guise of an appeal." *Id.* Nor may it seek a second review of the Injunction using that same mechanism.

Second, Apple has not presented an "as-applied" challenge to the Injunction allowing it to litigate here the arguments waived in its Liability/Injunction appeal. *See* Br. 26, 32. Apple cites *Samnorwood Independent School District v. Texas Education Agency,* 533 F.3d 258 (5th Cir. 2008) and *McKusick v. City of Melbourne*, 96 F.3d 478 (11th Cir. 1996), but neither case involved a defendant's challenge to the legality of an injunction. Rather, in both cases, the appellant, who was not a party to the underlying lawsuit when the injunction issued, sought a declaratory judgment that the injunction did not apply to it and an order barring another party from enforcing the injunction against it. Apple sought no comparable relief in the district court. Apple requested only the disqualification of the Monitor, which is properly before this Court, and a stay of the Injunction, which is not appealable at all.

Finally, Apple's offhand reference to mandamus jurisdiction, Br. 2, is pointless. Mandamus is unnecessary; Apple could have actually challenged the legality of the Injunction in the Liability/Injunction

27

Appeal, and it can make its disqualification arguments here.  Moreover,

Apple has nowhere argued, let alone demonstrated, that its right to

relief on any issue is so "clear and *indisputable*" as to justify

mandamus.  *Drexel*, 861 F.2d at 1312 (emphasis in original).

## II. The District Court Did Not Abuse Its Discretion By Declining To Disqualify The Monitor

The Monitor has been an impartial aid to the district court, and his

actions demonstrate diligence and patience – not bias or improper

personal knowledge.  Accordingly, the district court did not abuse its

discretion in declining to disqualify him.  The court applied the

standard set forth in 28 U.S.C. § 455, in particular its objective

impartiality inquiry, which asks whether an "objective and

disinterested observer, knowing and understanding all of the facts and

circumstances, could reasonably question the [Monitor's] impartiality,"

*SEC v. Razmilovic*, 738 F.3d 14, 29 (2d Cir. 2013), *as amended* (Nov. 26,

2013); *see* Dkt.437.49 (A942).  That standard applies to monitors

appointed under Rule 53.  Fed. R. Civ. P. 53(a)(2).  And Apple does not

suggest a stricter standard applies to monitors appointed under the

court's inherent authority.  Neither do we.

28

The Monitor's report to the district court on his interactions with Apple is no ground for disqualification. Apple, in seeking a stay, filed declarations from its counsel criticizing the conduct of the Monitor. Dkt.437.53 (A946); *see* Dkt.417, 418, 419 (A589-616, 522-24, 525-29). In response, the Monitor wrote a declaration detailing for the court his recollection of those same events. As the district court observed, "[i]t would be surprising if a party subject to a monitor could escape the monitorship by launching a cascade of attacks on the monitor and then disqualify the monitor for responding." Dkt.437.54 (A947).

Apple nonetheless argues that because the Monitor's declaration addressing Apple's attacks was filed with the Plaintiffs' papers, the Monitor acted as a witness against Apple. Br. 36. But as the district court said, "it was the Monitor's duty," as the court's agent, "to provide the Court with his understanding of the full factual story so that the Court could render an informed judgment, address [the stay] motion, and oversee the monitorship." Dkt.437.54 (A947). Regardless of the filing mechanism, by providing his declaration the Monitor served as an agent of the court, not as a witness for the Plaintiffs.

29

Apple also claims that the Monitor has "personal knowledge" based upon "*ex parte* contacts with Apple and the plaintiffs." Br. 36. But personal knowledge requires disqualification under Section 455 only when it is extrajudicial knowledge, and not knowledge acquired – as was the Monitor's – by attending to the task at hand. *Razmilovic*, 738 F.3d at 29-30; Dkt.437.54 (A947). The Monitor needed personal knowledge of Apple's antitrust compliance programs to do his job.

That Plaintiffs were not included in the Monitor's interviews of Apple employees neither renders the knowledge gained extrajudicial nor prejudices Apple. Indeed, Apple never requested that Plaintiffs attend those interviews. As the Injunction contemplates, Dkt.374.VI.A,I (A474-75, 478), the Monitor also had conversations with Plaintiffs, including a pre-appointment interview and fee discussions, *see* Dkt.424.¶¶9,10,18 (A649, 651), in which Apple did not participate. Apple did not object to the relevant Injunction provisions prior to their entry, nor does it now establish prejudice from those conversations. Because the Monitor's *ex parte* contacts were "merely part of the performance of his prescribed duty," *Yonkers*, 946 F.2d at 184, they created neither an appearance of nor actual partiality.

30

Apple argues that the Monitor should have sought "permission to file a report . . . on the record and after hearing from both sides." Br. 36. But a formal hearing is required only if a monitor's report is to be granted a "presumption of correctness" and deferred to under a "clearly erroneous" standard of review. *Ruiz v. Estelle*, 679 F.2d 1115, 1163 (5th Cir. 1982). The district court did not defer to the Monitor's report. Instead, the district court made its own findings of fact after reviewing declarations from the Monitor and Apple, and Apple does not now challenge any of these findings as clearly erroneous.

*Cobell v. Norton*, 334 F.3d 1128 (D.C. Cir. 2003) (*Cobell II*), upon which Apple extensively relies, is inapposite. That case involved an Administrative Procedure Act (APA) challenge to the Department of Interior's management of Individual Indian Money trust accounts. *See Cobell v. Norton*, 240 F.3d 1081, 1094-95 (D.C. Cir. 2001) (*Cobell I*). No injunction had been entered as the case had been remanded to the Department for further proceedings. *Cobell II*, 334 F.3d at 1134, 1143. Nonetheless, the court, over the Department's separation of powers objections, *see infra* pp. 50-52, appointed a monitor to oversee the Department's trust reform efforts, *Cobell II*, 334 F.3d at 1141. After the

31

monitor had obtained access to the Department's internal deliberations on the still-pending APA lawsuit, the court designated him a Special Master charged with adjudicating discovery disputes. *Id*. at 1136-1137. The court of appeals held that the district court should not have appointed the monitor "to a judicial role in a case in which he had significant prior knowledge obtained in his role as a Court Monitor, on the basis of which he had formed and expressed opinions of continuing relevance to the litigation." *Id*. at 1144.

By contrast, the Monitor here has not been assigned additional duties; his task is, and always has been, limited to assessing Apple's compliance with certain aspects of the Injunction. Moreover, unlike the *Cobell II* monitor/special master, he has no adjudicatory authority. The Monitor cannot command Apple to do anything at all – even regarding its compliance and training programs; only the district court can. Moreover, the Monitor has not demonstrated a "settled opinion about what [Apple] should and should not do" to comply with the Injunction. Br. 37 (quoting *Cobell II*, 334 F.3d at 1144). As Apple acknowledges, Br. 28, the Monitor made no recommendations regarding Apple's training programs before Apple sought his disqualification.

32

Finally, Apple argues that the Monitor must be disqualified because his fees give him a "financial incentive in the monitorship," Br. 36, that is, he is paid for his time. But Apple did not object either to the Monitor being paid or to the Injunction's specific fee-setting provisions. Dkt.437.51 (A944). Indeed, monitors and special masters routinely bill for time, typically charging their "standard hourly rate" plus costs and expenses. Thomas E. Willging et al., *Special Masters' Incidence and Activity*, Federal Judicial Center, 42 (2000) (available at www.fjc.gov/public/pdf.nsf/lookup/SpecMast.pdf/$file/SpecMast.pdf).

Moreover, the district court – not the Monitor – determines whether the monitorship is to continue. Dkt.374.VIII.C (A481). And despite Apple's claims to the contrary, Br. 31, the Injunction provides that if "*Apple* determines that the . . . Monitor has ceased to act or failed to act diligently or in a cost-effective manner, it may recommend that the Court appoint a substitute . . . Monitor."[7] Dkt.374.VI.J (A478) (emphasis added). Apple has not done so.

---

[7] It is neither surprising nor relevant here that, as Apple points out, Br. 23 n.5, a few commentators have criticized certain aspects of some monitorships.

## III. Apple's Objections To The Injunction Are Waived And Without Merit

Even if the legality of the Injunction's monitorship provision were at issue here, the district court did not abuse its discretion by entering an Injunction providing for an external compliance monitor. Apple waived its meritless Rule 53 and due process arguments by failing to raise them before the Injunction's entry. And this limited monitorship of a private company does not implicate the federal separation of powers.

### A. Apple Waived Its Rule 53 And Due Process Arguments

Apple argues that the monitorship provision violates both Rule 53 and its due process right to a disinterested prosecutor. But even though it opposed a monitorship, it did not raise either argument during the lengthy remedy proceedings in the district court. Instead it first raised them on November 27, 2013, Br. 12; Dkt.411 (A487-517), two months after Apple's notice of appeal from the Injunction divested the district court of jurisdiction to amend the Injunction substantively, *see Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982) (effect of notice of appeal). Just as "an appellate court will not consider an issue raised for the first time on appeal," *Greene v. United States*, 13 F.3d 577, 586 (2d Cir. 1994), it will not consider an issue first raised after the district

34

court no longer has authority to act on it, *see, e.g.*, *Mick Haig Prods.*
*E.K. v. Does 1-670*, 687 F.3d 649, 652 (5th Cir. 2012) (appellant waived
arguments first raised "in his untimely motion in the district court to
stay sanctions pending appeal . . . filed after this appeal was initiated").

While a court of appeals may exercise its discretion to consider
waived arguments, this is a singularly unsuitable case in which to do
so. Apple not only failed timely to mention the Rule 53 or due process
arguments in the district court, it also failed to raise them in the
Liability/Injunction Appeal, where they would at least be relevant to
the issues before the Court. *See supra* p. 25. And Apple has not
"proffer[ed any] reason," in either appeal, "for [its] failure to raise the
arguments below." *Allianz Ins. Co. v. Lerner*, 416 F.3d 109, 114 (2d Cir.
2005). Instead, Apple simply asserts that it "repeatedly raised the[se]
precise arguments." Br. 26 n.6 (citing Br. 11-15). Indeed it did – but
always too late. It could have raised them in a timely manner, but, as
Apple admits, prior to entry of the Injunction it argued that the
monitorship was "unjustified" and "beyond any 'logical nexus' with the
alleged violation." Br. 11. Apple waited until November 27, 2013 – long
after its appeal divested the district court of jurisdiction to amend the

35

Injunction – to raise arguments about "Rule 53, the separation of powers, and due process."  Br. 12.

## B.  Apple's Rule 53 And Due Process Arguments Are Meritless

### 1.  The District Court Properly Exercised Its Inherent Authority To Appoint A Compliance Monitor

Courts have "inherent" authority to appoint persons to assist them. *Ex Parte Peterson*, 253 U.S. 300, 312-13 (1920).  This includes administrators to aid in remedying violations of the law.  *Local 28 of Sheet Metal Workers' Int'l Ass'n v. EEOC*, 478 U.S. 421, 481-82 (1986) (affirming appointment of administrator with "broad powers to oversee [union's] membership practices" even though such oversight could "substantially interfere with . . . membership operations").  The power of the federal courts to appoint individuals "to monitor compliance with their remedial orders is well established."  *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 145 (2d Cir. 2011) (citation omitted).

This principle fully applies in civil antitrust cases, where remedies should end the unlawful conduct, prevent its recurrence, and undo its anticompetitive consequences.  *See Nat'l Soc'y of Prof'l Eng'rs v. United States*, 435 U.S. 679, 697 (1978).  Courts remedying antitrust violations have "large discretion to fit the decree to the special needs of the

individual case." *Ford Motor Co. v. United States*, 405 U.S. 562, 573 (1972) (internal quotations omitted).

The district court properly exercised its broad remedial discretion in creating a monitorship here. The court carefully considered Apple's "blatant and aggressive disregard . . . for the requirements of the law," Dkt.371.17:1-2 (A441), the non-credible testimony of its executives and in-house lawyer in its defense, and the inability of those individuals to remember any training on antitrust issues. The court gave Apple several opportunities to show that no external compliance monitor was necessary, but Apple failed to do so. Dkt.371.17:7-16 (A441). The court lawfully appointed a compliance monitor with a narrow mandate to evaluate Apple's antitrust training and compliance programs and with appropriately limited tools to perform those tasks.

### 2. The Monitorship Does Not Violate Rule 53

Rule 53, which provides for appointment of masters, supplements but "does not terminate or modify the district court's inherent equitable power to appoint a person . . . to assist it in administering a remedy." *Ruiz*, 679 F.2d at 1161. In any event, the monitorship here is entirely consistent with Rule 53, which expressly authorizes the appointment of

37

individuals to assist the court on "posttrial matters that cannot be effectively and timely addressed by an available district judge." Fed. R. Civ. P. 53(a)(1)(c). As the advisory committee on the Federal Rules of Civil Procedure explained, "[c]ourts have come to rely on masters to assist in framing and enforcing complex decrees." Fed. R. Civ. P. 53 advisory committee note (2003 amendment). Indeed, "[t]his practice has been recognized by the Supreme Court." *Id.* (citing *Sheet Metal Workers*, 478 U.S. at 481–82).

1. Apple argues that the monitorship violates Rule 53 because that rule, it contends, allows only performance of "specific *judicial duties*." Br. 21. The judicial role includes evaluating compliance with the court's own order, but Apple's cramped view of the Monitor's authority would prevent him assisting the court in performing that judicial role. For example, Apple complains that the Monitor may request (though not compel) documents and interviews. Br. 26-27. But a monitor cannot evaluate anything without reviewing documents and conducting interviews. Moreover, as the rules advisory committee explained, a "master's role in enforcement may extend to investigation in ways that are quite unlike the traditional role of judicial officers in an adversary

38

system." Fed. R. Civ. P. 53 advisory committee note (2003 amendment). And courts have approved monitors under Rule 53 with "sweeping powers" of investigation, including "unlimited access" to premises and records. *Ruiz*, 679 F.2d at 1162.

The Monitor's investigative authority here is far more limited than the "unlimited access" of *Ruiz*. Only Apple asserts that the Injunction authorizes the Monitor to "interview any of Apple's employees and demand to review any of its documents" without limitation. Br. 15-16. Actually, the Monitor may only request interviews and documents "in connection with the exercise of his . . . responsibilities." Dkt.374.VI.G (A477); *see also* 2/4/14 Arg. Tr. at 27:6-19 (A967). He must provide reasonable notice before requesting reports and inspecting documents, and he may interview Apple personnel only at their reasonable convenience and with counsel present. Dkt.374.VI.G (A477).

Moreover, the Monitor may only *request* documents and interviews; he cannot *order* Apple to comply. If Apple objects to a request, it may seek relief from the district court. *See* Dkt.437.13-14 (A906-07). Apple complains that the Monitor has "demanded unbounded, irrelevant interviews," Br. 17, but it did not identify any specific "irrelevant"

39

interview, either in its brief here or in the district court, despite the court's invitation to use the Injunction's procedures "to resolve any concerns about the monitoring." Dkt.413.2 (A519).

Apple complains that the Monitor can conduct "*ex parte* interviews with employees and officers of a party." Br. 30. It is difficult to understand how Apple is prejudiced by the absence of Plaintiffs' representatives during interviews of Apple's employees. But in any event, such "confidential interviews" are permissible under Rule 53. *Ruiz*, 679 F.2d at 1162.[8]

2. Apple's arguments from case law fare no better. Even though *Ruiz* condoned the grant of "sweeping" investigatory powers to a monitor, Apple claims that *Ruiz* bolsters its argument because the Fifth Circuit "*reversed* due to [a] failure to limit the scope of the granted investigatory powers." Br. 25 (emphasis in original). But the court of appeals did not "reverse" either the lower court's appointment of a monitor or its grant of "sweeping" investigatory powers. Rather, the

---

[8] If by "*ex parte*" Apple means "without the presence of counsel," *see* Dkt.437.32 (A925), the Injunction specifically provides that interviewees may have counsel present, Dkt.374.VI.G.1 (A477).

court simply required that "the order of reference . . . be amended" to "ma[ke] clear that the special master and the monitors do not have the authority to hear matters that should appropriately be the subject of separate judicial proceedings." *Ruiz*, 679 F.2d at 1163. Comparable clarification is unnecessary here because the Injunction explicitly prohibits the Monitor from investigating violations of the Injunction or the antitrust laws. Dkt.374.VI.F (A476-77).

Apple also claims the *Ruiz* court "*reversed* because the special master's power to submit reports . . . 'in the absence of a formal hearing' . . . violated due process." Br. 25 (quoting *Ruiz*, 679 F. 2d at 1162-63). Not so. The *Ruiz* court merely held that reports issued without formal hearings were "not to be accorded any presumption of correctness and the 'clearly erroneous' rule will not apply to them." 679 F.2d at 1163. The district court afforded the Monitor's reports no presumption of correctness here. Indeed, with respect to the only report at issue in this appeal, the Monitor's declaration, the district court made its own factual findings. *See* Dkt.437.15-29 (A908-22). Apple does not now challenge those factual findings as clearly erroneous.

41

Apple tries to make several arguments from *Cobell II*, but that
decision supports none of them.  Apple suggests that, under *Cobell II*, a
court can never appoint a compliance monitor over the monitored
party's objection.  Br. 15-16, 21.  But the *Cobell II* court's holding was "a
narrow one, tethered to the peculiar facts" of the case.  334 F.3d at
1141.  It did not bar all compliance monitors to which the monitored
party objects.

In *Cobell II*, the government's objection to the monitorship was not
based on Rule 53.  The objection was "that the appointment violated the
separation of powers" because it "entailed a license [to an agent of the
judiciary] to intrude into the internal affairs of the Department [of the
Interior]," an executive branch agency.  *Cobell II*, 334 F.3d at 1141,
1143.  The court of appeals agreed.  *Id.*  Apple, a private company, did
not and could not raise such a separation of powers objection.  *See infra*
pp. 49-53.

Moreover, *Cobell II* expressly recognized the authority of a district
court to appoint a monitor to "superintend[] compliance with the district
court's decree."  *Id.* at 1142-43 (internal citations omitted).  But the
*Cobell* monitor went "far beyond" that, not least because "there was no

42

decree to enforce." *Id.* As required by the APA, the district court had remanded the case to the Department, granting the agency "'discretion to determine in the first instance,' how to bring [itself] into compliance." *Cobell I*, 240 F.3d at 1109 (quoting *Global Van Lines, Inc. v. ICC*, 804 F.2d 1293, 1305 n.95 (D.C. Cir. 1986)).

Finally, the *Cobell* monitor's authority was unbounded; he was ordered to "monitor and review all of the . . . [Department's] trust reform activities," without limitation, including "any . . . matter [he] deem[ed] pertinent to trust reform." *Cobell II*, 334 F.3d at 1143. By contrast, the Monitor's tasks here are limited. He may not evaluate Apple's compliance with the antitrust laws or even with the Injunction generally, but may evaluate only Apple's antitrust training and compliance policies and procedures. *See supra* pp. 8-9. Moreover, the Monitor here may not "direct the defendants or any of their subordinates to take or to refrain from taking any specific action to achieve compliance." *Cobell II*, 334 F.3d at 1143 (quoting *Ruiz*, 679 F.2d at 1161). He is allowed only to suggest changes to Apple's compliance programs, to which Apple may object and suggest

43

alternatives, with the ultimate decision left to the district court.

Dkt.374.VI.E (A476).[9]

3. Apple claims that the Monitor's efforts to interview Apple

employees during the first months of his appointment without

"offer[ing] any suggestions or guidance regarding Apple's antitrust

training programs" during this time somehow "bespeaks a purpose to

monitor Apple's 'compliance with [its] compliance policies.'" Br. 28. But

the Injunction was clear; the Monitor was to assess Apple's programs as

they existed 90 days after the Injunction's entry. As the district court

explained, in order to conduct his assessment "in a meaningful and

timely way," the Monitor had to use the first 90 days to become familiar

─────────────────

[9] Other cases upon which Apple relies, Br. 19-21, are irrelevant here. In
*La Buy v. Howes Leather Co.*, the district court, facing an "extremely
congested calendar," referred two antitrust trials to a special master
over the parties' objections. 352 U.S. 249, 253 (1957). The Supreme
Court held that this "amounted to little less than an abdication of
judicial function depriving the parties of a trial before the court on the
basic issues involved in the litigation" but distinguished it from the
proper referral of post-liability determinations, such as "damages
suffered by each plaintiff." *Id.* at 256, 259. *Reed v. Rhodes*, unlike this
case, involved an appeal from an award of fees to a special master; it
says nothing about the proper limits of a monitor's authority. 691 F.2d
266 (6th Cir. 1982).

with Apple, its personnel, and its procedures.  Dkt.437.45-46 (A938-39).

Apple's claim that the Monitor had to wait until that 90-day period had

passed to do *any* work was a "strained and unreasonable reading of the

Injunction."  Dkt.437.45 (A938).

Apple's footnote argument that the district court has "broadened the

monitorship's scope," Br. 27 n.7, fares no better.  Apple cites the district

court's proposed amendments to the order appointing Bromwich as

Monitor.  But, as Apple admits, the district court never entered those

amendments.  Apple also complains that the district court, in rejecting

Apple's stay request, quoted the language of the Injunction authorizing

the Monitor to request documents and interviews, but it fails to explain

how quoting the language of the Injunction "broadened" its scope.  And

Apple repeats its unsound complaint that the Monitor sought

interviews during the first three months of his appointment, even

though such interviews are well within the scope of the monitorship laid

out in the Injunction.

4.  Finally, Apple speculates that the Monitor might provide

information relevant to the Plaintiff-States' damages case to either

Judge Cote, who presides over the case, or the Plaintiff-States

45

themselves. Br. 28-29. But the district court has preliminarily approved a settlement of the damages action, rendering these arguments moot. *See* 12cv3394.Dkt.540 (A985-93); *In re Elec. Books Antitrust Litig.*, 2014 WL 3798764 (S.D.N.Y. Aug. 1, 2014).

Moreover, these arguments are unsound. Apple's counsel attended the Monitor's interviews with Apple employees. *See supra* pp. 13-14. If the Monitor had improperly asked for information relevant to the damages trial, Apple could have objected and sought relief. It did not. Likewise, if Apple believed that the Monitor could obtain otherwise unavailable information from a third party to share with the court (or with Plaintiff-States), Br. 28-29, Apple could have asked the district court to compel disclosure of such information. It did not.

Furthermore, there have been no *ex parte* communications between the district court and the Monitor other than a pre-appointment interview, provided for in the Injunction and to which Apple did not object. Dkt.437.55-56 (A948-49). Apple promptly receives all the Monitor's reports to the district court and may object to any information improperly reported in them. And Apple provides no reason to believe that these reports about Apple's antitrust compliance policies and

46

procedures would compromise the district court's impartiality in the (now-settled) damages case. Of course, the only report at issue here is the Monitor's declaration in response to Apple's attacks, and Apple identifies no information relevant to the damages action in that report.

### 3. The Monitor Is Not A Prosecutor, Nor Does He Have An Improper Interest In The Outcome Of The Case

The Monitor does not violate Apple's right to a disinterested prosecutor, Br. 32, because "the Monitor is not a prosecutor," Dkt.437.50 (A943). As the district court explained, the Injunction "expressly prohibits prosecutorial investigative activity." *Id.* It bars the Monitor from investigating any "potential violation of the Final Judgment or the antitrust laws." Dkt.374.VI.F (A476-77). Instead, if the Monitor discovers or receives evidence of such violations, he must provide it to the Plaintiffs. *Id.*

Moreover, the Monitor is disinterested; he is compensated for his time, not the content of his recommendations. Apple's objections to the "lucrative nature" of the monitorship, Br. 32, amount to a complaint about the unremarkable fact that the Monitor is paid for the time he spends doing his job. But none of the cases Apple cites, Br. 32-34, say anything about the propriety of a court-appointed monitor "being

47

merely paid for his time on a basis that is not contingent on the outcome." Dkt.437.50 (A943); *cf. Caperton v. A.T. Massey Coal Co.,* 556 U.S. 868, 884 (2009) (CEO of defendant company "had a significant and disproportionate influence in placing the judge on the case by raising funds or directing the judge's election campaign when the case was pending or imminent"); *Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787 (1987) (counsel for a private party benefitting from an order cannot be appointed to prosecute criminal violations of that order); *People ex rel. Clancy v. Superior Court*, 39 Cal. 3d 740, 746 (1985) (attorney paid contingency fee by city for abatement actions).

Nor does Apple credibly assert any conflict of interest. It claims that because the Monitor is paid, he has purportedly "taken on functions never authorized in the final judgment." Br. 33. But Apple does not identify those allegedly improper functions. And although Apple complains about the Monitor's rates, fees, and invoices, Br. 8 n.2, 10, 34, they are not at issue here. Apple paid no fees to the Monitor prior to the order on appeal. Moreover, in that order, the district court referred Apple's complaints regarding the Monitor's hourly rates to a magistrate judge for resolution. As Apple itself acknowledges, that referral

resulted in an agreed-upon rate, Br. 8 n.2, and if Apple believes that particular charges or actions are improper, it may object to the district court. Dkt.437.13-14; Dkt.374.VI.H (A906-07, 477).

Finally, Apple contends that the Monitor has an "incentive to induce the court" to extend the monitorship, purportedly demonstrated by his providing a declaration during the stay proceedings. Br. 33. But the Monitor did not, as Apple claims, "defend the propriety of the monitorship." *Id.* Rather, in response to Apple's attacks on his conduct and character, he appropriately reported to the district court his dealings with Apple. *See supra* p. 29. Moreover, whether or not the Monitor believes the monitorship should be extended, only the court can extend it. Dkt.374.VIII.C (A481). If Apple believes that the Monitor is not acting cost-effectively, it may request a new monitor. Dkt.374.VI.J (A478). Apple has not done so.

## C. Apple Cannot Save Its Waived Arguments By Recasting Them As Implicating The Federal Separation Of Powers

Apple unconvincingly seeks to repackage its arguments regarding the monitorship as implicating the federal separation of powers. Br. 19 n.4 ("[T]he fundamental limitations imposed by Rule 53 . . . track the constitutional separation of powers."). While a separation of powers

49

argument cannot be waived, it is still limited to cases in which it has some relevance.  Here, it has none.

Apple argues that the Monitor has been improperly granted "extrajudicial" authority.  Br. 15.  But the judicial power is not nearly so limited as Apple suggests.  The powers of the judiciary include those that are not "considered typically 'judicial'" and have "few analogues among the court's more traditional powers."  *Morrison v. Olson*, 487 U.S. 654, 682 (1988).  Moreover, the "ability to punish disobedience to judicial orders is regarded as essential to ensuring that the Judiciary has a means to vindicate its own authority without complete dependence on other Branches."  *Young*, 481 U.S. at 796.  Thus, the power of a federal court to appoint an agent to supervise the implementation of its decrees has long been established.  *See Sheet Metal Workers*, 478 U.S. at 482 (citing *Ruiz*, 679 F.2d at 1160-63).

Recast to invoke the separation of powers, Apple's argument relies heavily on *Cobell II*.  But the separation of powers problem in *Cobell II* was not, as Apple argues, Br. 15-16, 23-24, 30, that the district court had encroached on an executive function by authorizing a monitor to conduct interviews and review documents.  Rather, as Apple recognizes,

50

*Cobell II* concerned "the propriety of a federal court authorizing its agent to interfere with the affairs of another branch of the federal government." Br. 24 (quoting *Cobell II*, 334 F.3d at 1142).

The court of appeals did not "'put aside that question' to reach its . . . separation of powers holding," *id.*, but instead put aside an entirely different question, one not relevant here. After citing cases involving "remedial order[s] requiring major structural reform of a *state* institution," the court "[p]ut[] aside the question whether *those cases* shed any light whatsoever upon the propriety of a *federal* court authorizing its agent to interfere with the affairs of another branch of the *federal* government" and then held that the district court had gone "far beyond the practice that has grown up under Rule 53." *Cobell II*, 334 F.3d at 1142 (emphases added). The *Cobell* district court not only granted the monitor authority unbounded by any decree, *see supra* p. 43, it also gave the monitor "a license to intrude into the internal affairs of the Department," *Cobell II*, 334 F.3d at 1143. The court determined that such an intrusion "simply is not permissible under our adversarial system of justice and our constitutional system of separated powers." *Id.* But this determination does not suggest that a monitor evaluating

51

the compliance of a private corporation with a court order also violates the federal separation of powers.

Nor do any of the remaining cases Apple cites. *Morrison* expressly recognized the ability of the judiciary to engage in conduct that would not be "considered typically 'judicial.'" 487 U.S. at 682. *Buckley v. Valeo* said nothing about the power of the judiciary but held that Federal Election Commissioners appointed by Congress could not exercise certain powers reserved for Presidential appointees. 424 U.S. 1, 5 (1976). The Court nonetheless recognized that "investigative and informative powers" may be held by those outside the Executive Branch. *Id.* And as Apple recognizes, *Ruiz* does not address the federal separation of powers. Br. 24.

Finally, Apple's reliance on *United States v. Philip Morris USA Inc.*, 566 F.3d 1095 (D.C. Cir. 2009), Br. 24, is misplaced as neither the court of appeals nor the district court mentioned the separation of powers in that case. Rather, the district court refused to delegate its Article III "power to conduct hearings, determine violations, and to direct changes in Defendants' actions" to an independent officer. *United States v. Philip Morris USA Inc.*, 449 F. Supp. 2d 1, 936 (D.D.C. 2006). (Here, it

52

is the district court, not the monitor, who exercises those powers.) The court of appeals did not rule on the district court's conclusion that the "proposed monitor possessed impermissibly broad powers." *Philip Morris*, 566 F.3d at 1150. It held only that the lower court need not "have *sua sponte* created a modified version of the government's monitoring scheme." *Id.* Neither court had any reason to address whether the monitorship of a private company implicates the separation of powers, as it plainly does not. And in any event, the monitorship here is not impermissibly broad under any applicable standard.

## CONCLUSION

The only question in this appeal is whether the district court abused its discretion by declining to disqualify the Monitor; it did not, as the Monitor demonstrated neither partiality nor possession of extrajudicial knowledge. The Injunction's legality is at issue in Apple's appeal from the Injunction – not this appeal from Apple's request to disqualify the Monitor. But in any event, the Injunction was within the district court's authority to order and should not be vacated. Instead, the Court should deny all of Apple's requested relief.

Respectfully submitted.

53

September 18, 2014

/s/ Finnuala K. Tessier
_____

WILLIAM J. BAER
   *Assistant Attorney General*

MARK W. RYAN
DANIEL MCCUAIG
   *Attorneys*
   U.S. Department of Justice
   Antitrust Division

KRISTEN C. LIMARZI
ROBERT B. NICHOLSON
DAVID SEIDMAN
FINNUALA K. TESSIER
   *Attorneys*
   U.S. Department of Justice
   Antitrust Division
   950 Pennsylvania Ave. NW Room 3224
   Washington, DC 20530-0001
   202-305-7420

**For Plaintiff United States**

/s/ W. Joseph Nielsen
_____

GEORGE JEPSEN
   *Attorney General of Connecticut*

W. JOSEPH  NIELSEN
   *Assistant Attorney General*
   Office of Attorney General of Connecticut
   55 Elm Street
   Hartford, CT 06106
   860-808-5033

**For Plaintiff-States**

/s/ Andrew Oldham
_____

GREG ABBOTT
   *Attorney General of Texas*

DANIEL T. HODGE
   *First Assistant Attorney General*

JOHN SCOTT
   *Deputy Attorney General*

JONATHAN F. MITCHELL
   *Solicitor General*

ANDREW OLDHAM
   *Deputy Solicitor General*

JOHN T. PRUD'HOMME
KIM VAN WINKLE
ERIC LIPMAN
   *Assistant Attorneys General*
   Office of Attorney General of Texas
   P.O. Box 12548
   Austin, TX 78711-2548
   512-463-1579

/s/ Won S. Shin
_____

ERIC T. SCHNEIDERMAN
   *Attorney General of the State of New York*

WON S. SHIN
   *Assistant Solicitor General*
   Office of Attorney General of New York
   120 Broadway, 25th Floor
   New York, NY 10271
   212-416-8808

**For Plaintiff State of New York**

**For Plaintiff-States**

## CERTIFICATE OF COMPLIANCE

1.  This brief complies with Rule 32(a)(7) of the Federal Rules of Appellate Procedure because it contains 9,958 words, excluding the parts of the brief exempted by Rule 32(a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word 2007 with 14-point New Century Schoolbook font.

September 18, 2014                    /s Finnuala K. Tessier
                                                   *Attorney*

## CERTIFICATE OF SERVICE

I, Finnuala K. Tessier, hereby certify that on September 18, 2014, I electronically filed the foregoing Final Brief for Plaintiffs-Appellees United States of America and Plaintiff-States with the Clerk of the Court of the United States Court of Appeals for the Second Circuit by using the CM/ECF System.  I also sent six (6) copies to the Clerk of the Court by Federal Express.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

September 18, 2014               /s Finnuala K. Tessier

                                         *Attorney*